IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

---

|  |  |
|---|---|
| FEDERAL TRADE COMMISSION and STATE OF MAINE, | ) ) ) |
|  | ) Case No. |
| Plaintiffs, | ) ) |
| v. | ) **STIPULATED FINAL JUDGMENT** ) **AND ORDER FOR PERMANENT** ) **INJUNCTION AND OTHER** |
| XXL IMPRESSIONS LLC, a limited liability company, also d/b/a BETTER HEALTH NUTRITIONALS, | ) **EQUITABLE RELIEF AS TO** ) **DEFENDANTS J2 RESPONSE L.L.P.** ) **d/b/a J2 RESPONSE, JUSTIN** ) **BUMANN, and JUSTIN STEINLE** |
| JEFFREY R. POWLOWSKY, individually and as an owner and officer of XXL IMPRESSIONS LLC, | ) ) ) |
|  | ) |
| J2 RESPONSE L.L.P., a limited liability partnership, also d/b/a J2 RESPONSE, | ) ) |
|  | ) |
| JUSTIN BUMANN, individually and as a partner of J2 RESPONSE L.L.P., | ) ) |
|  | ) |
| JUSTIN STEINLE, individually and as a partner of J2 RESPONSE L.L.P., | ) ) |
|  | ) |
| SYNERGIXX, LLC, a limited liability company, also d/b/a CTF MEDIA, | ) ) |
|  | ) |
| CHARLIE R. FUSCO, individually and as an owner and officer of SYNERGIXX, LLC, | ) ) ) |
|  | ) |
| RONALD JAHNER, and | ) ) |
| BRAZOS MINSHEW a/k/a SAMUEL BRANT, | ) ) |
|  | ) |
| Defendants. | ) ) |

Plaintiffs, the Federal Trade Commission ("FTC" or "Commission") and the State of Maine, as represented in this matter by the Office of the Attorney General of Maine ("Maine AG") ("Plaintiffs"), filed a Complaint for Permanent Injunction and Other Equitable Relief against Defendants pursuant to Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b), pursuant to Section 4(a) of the Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. § 6103(a), and pursuant to Section 209 of the Maine Unfair Trade Practices Act ("Maine UTPA"), ME. REV. STAT. tit. 5, § 209, to obtain permanent injunctive relief, rescission or reformation of contracts, restitution, the refund of monies paid, disgorgement of ill-gotten monies, and other equitable relief for Defendants' acts or practices in violation of Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52, the Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. §§ 6101-6108, the FTC's Trade Regulation Rule entitled "Telemarketing Sales Rule" ("TSR"), 16 C.F.R. Part 310, the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. §§ 1693-1693r, and its implementing Regulation E, 12 C.F.R. § 1005.10, and Section 207 of the Maine UTPA, ME. REV. STAT. tit. 5, § 207, in connection with the labeling, advertising, marketing, distribution, and sale of products purported to provide relief from joint and back pain and to prevent or mitigate cognitive decline.

The Commission, the State of Maine, and Defendants stipulate to the entry of this Final Judgment and Order for Permanent Injunction and Other Equitable Relief as to Defendants J2 Response L.L.P., also d/b/a J2 Response, Justin Bumann, and Justin Steinle (hereafter collectively, "Defendants").

**FINDINGS**

1.      This Court has jurisdiction over this matter.

2.      The Complaint charges that Defendants participated in deceptive acts or practices in violation of Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52, the Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. §§ 6101-6108, the FTC's Trade Regulation Rule entitled "Telemarketing Sales Rule" ("TSR"), 16 C.F.R. Part 310, the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. §§ 1693-1693r, and its implementing Regulation E, 12 C.F.R. § 1005.10, and Section 207 of the Maine UTPA, ME. REV. STAT. tit. 5, § 207, in connection with the labeling, advertising, marketing, distribution, and sale of products purported to provide pain relief and to prevent or mitigate cognitive decline.

3.      Defendants neither admit nor deny any of the allegations in the Complaint, except as specifically stated in this Order.  Defendants admit the facts necessary to establish jurisdiction only for purposes of this action.

4.      Defendants waive any claim that they may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action through the date of this Order, and agree to bear their own costs and attorney fees.

5.      Defendants and Plaintiffs waive all rights to appeal or otherwise challenge or contest the validity of this Order.

**DEFINITIONS**

For the purpose of this Order, the following definitions apply:

1.      "**Clear(ly) and conspicuous(ly)**" means that a required disclosure is difficult to

miss (*i.e.*, easily noticeable) and easily understandable by ordinary consumers, including in all of

the following ways:

A.      In any communication that is solely visual or solely audible, the disclosure

must be made through the same means through which the communication

is presented.  In any communication made through both visual and audible

means, such as a television advertisement, the disclosure must be

presented simultaneously in both the visual and audible portions of the

communication even if the representation requiring the disclosure is made

in only one means;

B.      A visual disclosure, by its size, contrast, location, the length of time it

appears, and other characteristics, must stand out from any accompanying

text or other visual elements so that it is easily noticed, read, and

understood;

C.      An audible disclosure, including by telephone or streaming video, must be

delivered in a volume, speed, and cadence sufficient for ordinary

consumers to easily hear and understand it;

D.      In any communication using an interactive electronic medium, such as the

Internet or software, the disclosure must be unavoidable;

E.      The disclosure must use diction and syntax understandable to ordinary

consumers and must appear in each language in which the representation

that requires the disclosure appears;

F.      The disclosure must comply with these requirements in each medium through which it is received, including all electronic devices and face-to-face communications;

G.      The disclosure must not be contradicted or mitigated by, or inconsistent with, anything else in the communication; and

H.      When the representation or sales practice targets a specific audience, such as children, the elderly, or the terminally ill, "ordinary consumers" includes reasonable members of that group.

2.      "**Close proximity**" means that the disclosure is very near the triggering representation.  For example, a disclosure made through a hyperlink, pop-up, interstitial, or other similar technique is not in close proximity to the triggering representation.

3.      "**Corporate Defendant**" means J2 Response LLP, also d/b/a J2 Response and its successors and assigns.

4.      "**Covered Product**" means any Dietary Supplement, Food, or Drug, including but not limited to FlexiPrin and CogniPrin.

5.      "**Defendants**" means Individual Defendants and Corporate Defendant, individually, collectively, or in any combination.

6.      "**Dietary supplement**" means:

A.      any product labeled as a dietary supplement or otherwise represented as a dietary supplement; or

B.      any pill, tablet, capsule, powder, softgel, gelcap, liquid, or other similar form containing one or more ingredients that are a vitamin, mineral, herb or other botanical, amino acid, probiotic, or other dietary substance for use

5

by humans to supplement the diet by increasing the total dietary intake, or a concentrate, metabolite, constituent, extract, or combination of any ingredient described above, that is intended to be ingested, and is not represented to be used as a conventional food or as a sole item of a meal or the diet.

7.     "**Drug**" means:  (1) articles recognized in the official United States Pharmacopoeia, official Homeopathic Pharmacopoeia of the United States, or official National Formulary, or any supplement to any of them; (2) articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in humans or other animals; (3) articles (other than food) intended to affect the structure or any function of the body of humans or other animals; (4) articles intended for use as a component of any article specified in (1), (2), or (3); but does not include devices or their components, parts, or accessories.

8.     "**Essentially Equivalent Product**" means a product that contains the identical ingredients, except for inactive ingredients (*e.g.*, binders, colors, fillers, excipients), in the same form and dosage, and with the same route of administration (*e.g.*, orally, sublingually), as the Covered Product; *provided that* the Covered Product may contain additional ingredients if reliable scientific evidence generally accepted by experts in the field indicates that the amount and combination of additional ingredients is unlikely to impede or inhibit the effectiveness of the ingredients in the Essentially Equivalent Product.

9.     "**Food**" means:  (1) any article used for food or drink for humans or other animals; (2) chewing gum; and (3) any article used for components of any such article.

10.    "**Including**" means including but not limited to.

11.    "**Individual Defendants**" means Justin Bumann and Justin Steinle.

12.     **"Material connection"** means any relationship that materially affects the weight or credibility of any Endorsement and that would not reasonably be expected by consumers.

13.     "**Negative Option Feature**" means, in an offer or agreement to sell or provide any good, program, or service, a provision under which the consumer's silence or failure to make an affirmative action to reject goods or services, or to cancel the agreement, is interpreted by the seller or provider as acceptance of the offer.

14.     "**Person**" means a natural person, an organization, or other legal entity, including a corporation, partnership, sole proprietorship, limited liability company, association, cooperative, or any other group or combination acting as an entity.

15.     "**Preauthorized Electronic Fund Transfer**" as defined by the Electronic Fund Transfer Act, 15 U.S.C. § 1693a(10), means an electronic fund transfer authorized in advance to recur at substantially regular intervals.

## I.

## PROHIBITED REPRESENTATIONS:  PAIN RELIEF, CARTILAGE REBUILDING, COGNITIVE DECLINE, MEMORY IMPROVEMENT, AND DISEASE CLAIMS

**IT IS HEREBY ORDERED** that Defendants, Defendants' officers, agents, and employees, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any Covered Product, are hereby permanently restrained and enjoined from making, or assisting others in making, expressly or by implication, including through the use of a product name, endorsement, depiction, or illustration, any representation that, in humans, such Covered Product:

A.     Reduces joint pain, inflammation, or stiffness, including in as little as two hours;

     B.      Provides relief from back pain;

     C.      Reduces the need for medication;

     D.      Helps rebuild damaged joints or cartilage;

     E.      Reverses, mitigates, or prevents cognitive or mental decline;

     F.      Improves memory;

     G.      Restores lost memory capacity; or

     H.      Cures, mitigates, or treats any disease;

unless the representation is non-misleading and, at the time of making such representation, they possess and rely upon competent and reliable scientific evidence substantiating that the representation is true. For purposes of this Section, competent and reliable scientific evidence shall consist of human clinical testing of the Covered Product, or of an Essentially Equivalent Product, that is sufficient in quality and quantity based on standards generally accepted by experts in the relevant disease, condition, or function to which the representation relates, when considered in light of the entire body of relevant and reliable scientific evidence, to substantiate that the representation is true. Such testing shall be: (1) randomized, double-blind, and placebo-controlled; and (2) conducted by researchers qualified by training and experience to conduct such testing. In addition, all underlying or supporting data and documents generally accepted by experts in the field as relevant to an assessment of such testing as described in the Section entitled Preservation of Records Relating to Competent and Reliable Human Clinical Tests or Studies must be available for inspection and production to Plaintiffs. Persons covered by this Section shall have the burden of proving that a product satisfies the definition of Essentially Equivalent Product.

8

## II.

## PROHIBITED REPRESENTATIONS:  OTHER HEALTH-RELATED CLAIMS

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, and employees, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any Covered Product, are permanently restrained and enjoined from making, or assisting others in making, expressly or by implication, including through the use of a product name, endorsement, depiction, or illustration, any representation about the health benefits, safety, performance, or efficacy of any Covered Product, other than a representation covered under the Section of this Order entitled Prohibited Representations:  Pain Relief, Cartilage Rebuilding, Cognitive Decline, Memory Improvement, and Disease Claims, unless the representation is non-misleading, and, at the time of making such representation, they possess and rely upon competent and reliable scientific evidence that is sufficient in quality and quantity based on standards generally accepted by experts in the relevant disease, condition, or function to which the representation relates, when considered in light of the entire body of relevant and reliable scientific evidence, to substantiate that the representation is true.

For purposes of this Section, competent and reliable scientific evidence means tests, analyses, research, or studies (1) that have been conducted and evaluated in an objective manner by experts in the relevant disease, condition, or function to which the representation relates; (2) that are generally accepted by such experts to yield accurate and reliable results; and (3) that are randomized, double-blind, and placebo controlled human clinical testing of the Covered Product, or of an Essentially Equivalent Product, when such experts would generally require

9

such human clinical testing to substantiate that the representation is true. In addition, when such tests or studies are human clinical tests or studies, all underlying or supporting data and documents generally accepted by experts in the field as relevant to an assessment of such testing as set forth in the Section entitled Preservation of Records Relating to Competent and Reliable Human Clinical Tests or Studies must be available for inspection and production to Plaintiffs. Persons covered by this Section have the burden of proving that a product satisfied the definition of Essentially Equivalent Product.

### III.

### PROHIBITED REPRESENTATIONS REGARDING TESTS, STUDIES, OR INGREDIENTS

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, and employees, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any Covered Product are hereby permanently restrained and enjoined from misrepresenting, in any manner, expressly or by implication, including through the use of any product name, endorsement, depiction, or illustration:

    A.    That any Covered Product is clinically proven to rebuild joint cartilage, reduce back or joint pain, reduce stiffness, or reduce inflammation;

    B.    That any Covered Product is clinically proven to restore or improve memory, or mitigate cognitive decline;

    C.    That the performance or benefits of any Covered Product are scientifically proven; or

      D.      The existence, contents, validity, results, conclusions, or interpretations of any test, study, or research.

## IV.

## FDA-APPROVED CLAIMS

**IT IS FURTHER ORDERED** that nothing in this Order prohibits Defendants, Defendants' officers, agents, and employees, or all other persons in active concert or participation with any of them from:

      A.      For any drug, making a representation that is approved in labeling for such drug under any tentative final or final monograph promulgated by the Food and Drug Administration, or under any new drug application approved by the Food and Drug Administration; and

      B.      For any product, making any representation that is specifically authorized for use in labeling for such product by regulations promulgated by the Food and Drug Administration pursuant to the Nutrition Labeling and Education Act of 1990 or permitted under Sections 303-304 of the Food and Drug Administration Modernization Act of 1997.

## V.

## PRESERVATION OF RECORDS RELATING TO COMPETENT AND RELIABLE HUMAN CLINICAL TESTS OR STUDIES

**IT IS FURTHER ORDERED** that, with regard to any human clinical test or study ("test") upon which Defendants rely to substantiate any claim covered by this Order, Defendants shall secure and preserve all underlying or supporting data and documents generally accepted by experts in the field as relevant to an assessment of the test, including:

      A.      All protocols and protocol amendments, reports, articles, write-ups, or other accounts of the results of the test, and drafts of such documents reviewed by the test sponsor or any other person not employed by the research entity;

B.     All documents referring or relating to recruitment; randomization; instructions, including oral instructions, to participants; and participant compliance;

C.     Documents sufficient to identify all test participants, including any participants who did not complete the test, and all communications with any participants relating to the test; all raw data collected from participants enrolled in the test, including any participants who did not complete the test; source documents for such data; any data dictionaries; and any case report forms;

D.     All documents referring or relating to any statistical analysis of any test data, including, but not limited to, any pretest analysis, intent-to-treat analysis, or between-group analysis performed on any test data; and

E.     All documents referring or relating to the sponsorship of the test, including all communications and contracts between any sponsor and the test's researchers.

*Provided, however,* the preceding preservation requirement shall not apply to a reliably reported test, unless the test was conducted, controlled, or sponsored, in whole or in part by: (1) any Defendant; (2) any Defendant's officers, agents, representatives, or employees; (3) any other person or entity in active concert or participation with any Defendant; (4) any person or entity affiliated with or acting on behalf of any Defendant; (5) any supplier of any ingredient contained in the product at issue to any of the foregoing or to the product's manufacturer; or (6) the supplier or manufacturer of such product.

For purposes of this Section, "reliably reported test" means a report of the test has been published in a peer-reviewed journal, and such published report provides sufficient information about the test for experts in the relevant field to assess the reliability of the results.

For any test conducted, controlled, or sponsored, in whole or in part, by Defendants, Defendants must establish and maintain reasonable procedures to protect the confidentiality, security, and integrity of any personal information collected from or about participants. These procedures shall be documented in writing and shall contain administrative, technical, and physical safeguards appropriate to Corporate Defendants' size and complexity, the nature and scope of Defendants' activities, and the sensitivity of the personal information collected from or about the participants.

**VI.**

**PROHIBITED REPRESENTATIONS
RELATED TO ENDORSEMENTS**

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, and employees, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any good or service, are permanently restrained and enjoined from misrepresenting, in any manner, expressly or by implication, including through the use of any good or service name, endorsement, depiction, or illustration, that:

A.      Any person is an expert with respect to the Endorsement message provided by that person;

B.      Purported consumers who appear in advertising obtained a reported result through use of those goods or services;

C.      Experts are providing their objective, independent opinions regarding the efficacy of any good or service; and

D.      Any advertising is objective news or informational programming.

13

## VII.

### PROHIBITED REPRESENTATIONS
### RELATED TO ADVERTISING FORMAT

**IT IS FURTHER ORDERED** that Defendants and their officers, agents, and employees, and all other persons in active concert or participation with any of them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or indirectly, in connection with the advertising, marketing, promotion, offering for sale, sale, or distribution of any good or service, are hereby permanently restrained and enjoined from misrepresenting that paid commercial advertising is independent programming, including independent, educational programming, or an objective news report.

They are further permanently restrained and enjoined from presenting any radio advertisement fifteen (15) minutes in length or longer or intended to fill a time slot of fifteen (15) minutes in length or longer that does not state in the same language as the predominant language used in the advertisement, in a Clear and Conspicuous manner within the first thirty (30) seconds of the commercial and immediately before each presentation of ordering instructions for the good or service, the following disclosure:

"THE PROGRAM YOU ARE LISTENING TO IS A PAID

ADVERTISEMENT FOR [THE PRODUCT, PROGRAM, OR SERVICE]."

For the purpose of this provision, the presentation of a telephone number, mailing address, or website through which listeners may obtain more information or place an order for the product, program, or service shall be deemed a presentation of ordering instructions so as to require the stating of the disclosure provided herein.

14

## VIII.

## DISCLOSURE OF MATERIAL CONNECTIONS

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, and employees, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any good or service, are permanently restrained and enjoined from making any representation, expressly or by implication, including through the use of a good or service name, endorsement, depiction, or illustration, about any endorser of a good or service unless they disclose, Clearly and Conspicuously, and in Close Proximity to the representation, a Material Connection, when one exists, between such endorser and Defendants or any other individual or entity manufacturing, labeling, advertising, promoting, offering for sale, selling, or distributing such good or service.

## IX.

## OTHER PROHIBITED MISREPRESENTATIONS

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, and employees, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the advertising, marketing, promotion, offering for sale, sale, or distribution of any good or service, are permanently restrained and enjoined from misrepresenting, or assisting others in misrepresenting, expressly or by implication, any material fact, including, but not limited to:

    A.    That consumers are receiving a money-back guarantee, a free trial offer, a risk-free trial offer, a free gift, or a bonus;

B.      The total cost to purchase, receive, or use the good or service, including shipping, handling, processing, and any additional financial obligations that may be incurred as a result of accepting the free product, service, or offer;

C.      The timing or manner of any charge or bill;

D.      Any material restrictions, limitations, or conditions to purchase, receive, or use the good or service; and

E.      Any material aspect of the performance, efficacy, nature, or central characteristics of the good or service.

## X.

## REQUIRED DISCLOSURES

**IT IS FURTHER ORDERED** that, in connection with the advertising, marketing, promotion, offering for sale, sale, or distribution of any good or service, Defendants and their officers, agents, and employees, and all other persons in active concert or participation with any of them who receive actual notice of this Order, whether acting directly or indirectly, are permanently restrained and enjoined from:

A.      Failing to Clearly and Conspicuously disclose, or assisting others in failing to Clearly and Conspicuously disclose, before consumers are asked to reveal billing information or to consent to any purchase in connection with any claim that a good or service is "free," has a minimal cost, or is being offered on a trial basis or at an introductory or limited-time reduced cost, the following material terms and conditions of any offer:

1.      In close proximity to such claim, the total cost to purchase, receive, or use any good or service that is the subject of the sales offer, including shipping, handling, and processing;

2.      The amount, timing, and manner of payment of all fees, charges, or other amounts that a consumer will be charged or billed, and any additional financial obligations that may be incurred as a result of accepting the free product, service, or offer; and

3.      The terms and conditions of any refund, cancellation, exchange, or purchase policy or policies, including the specific steps and means by which such requests must be submitted, and the telephone number, email address, web address, or street address to which such requests must be directed, including the deadline (by date or frequency) by which the consumer must act, and, if there is a policy of not making refunds, cancellations, exchanges, or repurchases, a statement regarding this policy; and

B.      Failing to Clearly and Conspicuously disclose, or assisting others in failing to Clearly and Conspicuously disclose, before consumers are asked to reveal billing information or consent to any purchase that includes a Negative Option Feature:

1.      That the consumer will be charged for the good or service, or that the charges will increase after the trial period ends, and if applicable, that the charges will be on a recurring basis, unless the consumer timely takes steps to prevent or stop such charges;

2.      The amount (or range of costs) the consumer will be charged or billed, including shipping, handling, and processing, and, if applicable, the frequency of such charges unless the consumer timely takes steps to prevent or stop them;

3.      The deadline (by date or frequency) by which the consumer must act in order to stop the recurring charges;

4.      The name of the seller or provider of the good or service;

5.      A description of the good or service; and

6.      The mechanism to stop any recurring charges.

In addition, for any transaction involving a sale of a good or service to a consumer through a Negative Option Feature, within ten (10) days after the date of the sale, Defendants must send the consumer written confirmation of the transaction, either by email or first class mail, according to the consumer's preference, which is identified as a written confirmation in the email subject line or on the outside of the envelope.  Such written confirmation shall include Clear and Conspicuous disclosure of all the information required by this Subsection X.B(1)-(6) above, and shall specify the procedures by which consumers can cancel or obtain a refund.

## XI.

## EXPRESS INFORMED CONSENT

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, and employees, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the advertising, marketing, promotion, offering for sale, sale, or distribution of any good or service, are permanently restrained and enjoined from using billing information to obtain payment from a

consumer, unless, prior to using such billing information to obtain payment, Defendants obtain the express informed consent of the consumer.

A.   For all written offers with a Negative Option Feature (including over the Internet or other web-based applications or services), a consumer's express informed consent shall be obtained, prior to Defendants' obtaining any billing information from consumers, through a check box, signature, or other substantially similar method, that consumers must affirmatively select or sign to accept the Negative Option Feature.  Immediately adjacent to such check box, signature, or substantially similar method, Defendants shall disclose all costs associated with the Negative Option Feature, including shipping, handling, and processing, that the consumer is agreeing to pay such costs, the length of any trial period, and the date by which consumers must cancel to avoid being charged.  This disclosure shall contain no additional information and shall be Clear and Conspicuous in relation to any other information provided on the page relating to costs, risks, or obligations associated with any Negative Option Feature, including any terms referring to "free," "trial," and "processing fee."

B.   For all oral offers including a Negative Option Feature, Defendants shall, in addition to disclosing the information identified in the Section of this Order entitled Required Disclosures and prior to obtaining any billing information from a consumer, obtain affirmative and unambiguous oral confirmation that the consumer:

1.   Consents to authorizing payment for any goods or services, including shipping, handling, and processing;

19

2.      Understands that the transaction includes a Negative Option Feature; and

3.      Understands the specific affirmative steps the consumer must take to prevent further charges.

Defendants shall maintain for three (3) years from the date of each transaction an unedited voice recording of the entire transaction, including the prescribed statements set out in the Section of this Order entitled Required Disclosures.  Each recording must be retrievable by date and by the consumer's name, telephone number, or billing information and must be provided upon request and without charge to the consumer, the consumer's bank, or any law enforcement entity.

## XII.

## PROHIBITIONS CONCERNING REFUNDS AND CANCELLATIONS

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, and employees, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the advertising, marketing, promotion, offering for sale, sale, or distribution of any good or service, are permanently restrained and enjoined from:

A.      Misrepresenting, expressly or by implication, any material term of any refund, return, or cancellation policy or practice;

B.      Failing to honor a refund, return, or cancellation request that complies with any policy to make refunds or allow returns or cancellations; and

C.      Failing to provide a simple mechanism for a consumer to immediately stop any recurring charge for such good or service, at least one of which is as simple and easy to use as the mechanism the consumer used to initiate the charges.

1.      For consumers who entered into the agreement to purchase a good or service including a Negative Option Feature over the Internet or through other web-based applications or services, Defendants must provide a mechanism for consumers to stop the recurring charge over the Internet or through such other web-based application or service.

2.      For consumers who entered into the agreement to purchase a good or service including a Negative Option Feature through an oral offer and acceptance, Defendants must maintain a telephone number through which the consumer can easily cancel the good or service, seek a refund for past charges, and immediately stop all further charges.  Defendants must answer all calls to this telephone number during normal business hours.

## XIII.

## PROHIBITION ON VIOLATING THE RESTORE ONLINE SHOPPERS' CONFIDENCE ACT

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, and employees, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the advertising, marketing, promotion, offering for sale, sale, or distribution of any good or service, are permanently restrained and enjoined from violating the Restore Online Shoppers' Confidence Act, 15 U.S.C. §§ 8401-8405, a copy of which is attached hereto as EXHIBIT A.

## XIV.

## COMPLIANCE WITH THE ELECTRONIC FUND TRANSFER ACT

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, and employees, and all other persons in active concert or participation with any of them, who receive

21

actual notice of this Order, whether acting directly or indirectly, in connection with the advertising, marketing, promotion, offering for sale, sale, or distribution of any good or service, are permanently restrained and enjoined, in connection with any person who purchases any good or service subsequent to the date of this Order, and who uses a debit card or other means of electronic fund transfer, from:

A.    Failing to obtain written authorization for Preauthorized Electronic Fund Transfers from a consumer's account before initiating any Preauthorized Electronic Fund Transfer, as required by Section 907(a) of the Electronic Fund Transfer Act, 15 U.S.C. § 1693e(a), and Section 1005.10(b) of Regulation E, 12 C.F.R. § 1005.10(b), as more fully set out in Section 1005.10 of the Consumer Financial Protection Bureau's Official Staff Commentary to Regulation E, 12 C.F.R. § 1005, Supp. I; and

B.    Failing to maintain procedures reasonably adapted to avoid an unintentional failure to obtain written authorization for a Preauthorized Electronic Fund Transfer, as required in Section 1005.10 of the Consumer Financial Protection Bureau's Official Staff Commentary to Regulation E, 12 C.F.R. § 1005, Supp. I.

## XV.

## MONETARY JUDGMENT AND PARTIAL SUSPENSION

**IT IS FURTHER ORDERED** that:

A.    Judgment is hereby entered in favor of Plaintiffs and against Defendants, jointly and severally, in the amount of $6,574,957, as equitable monetary relief;

B.    Defendants are ordered to pay to the Commission $425,000, which, as Defendants stipulate, their undersigned counsel holds in escrow for no purpose other than

payment to the Commission.  Such payment must be made within 7 days of entry of this Order by electronic funds transfer in accordance with instructions previously provided by a representative of the Commission.

C.    Upon satisfaction of the obligations described in Subsection B, above, the remainder of the judgment as to the Defendants shall be suspended subject to Subsections E and F below;

D.    In the event of default on any obligation to make payments under this Order, including, but not limited to, failure to pay $425,000 to the FTC pursuant to Section B, above, interest shall accrue as computed pursuant to 28 U.S.C. § 1961(a) from the date of default to the date of payments.  In the event such default continues for ten (10) calendar days beyond the date any payments are due, the entire judgment amount of $6,574,957 shall immediately become due and payable.  Defendants shall be jointly and severally liable with all remaining defendants named in the Complaint filed in this action for all payments required by this Subsection and any interest on such payments;

E.    Plaintiffs' agreement to the suspension of part of the judgment is expressly premised upon the truthfulness, accuracy, and completeness of Defendants' sworn financial statements, and related documents (collectively, "financial representations") submitted to Plaintiffs, namely, the following:

1.    Individual and corporate financial disclosures, together with all attachments, submitted to Plaintiffs on July 6, 2016;

2.    Emails from counsel dated July 27, 2016 and August 3, 2016 clarifying financial questions;

23

      3.      Corporate and individual bank statements submitted to Plaintiffs on August 5, 2016;

      4.      Email from counsel dated September 22, 2016 with attachments explaining all receivables.

F.      The suspension of the judgment will be lifted as to any Defendant if, upon motion by either of Plaintiffs, the Court finds that such Defendant failed to disclose any material asset or income, materially misstated the value of any asset, or made any other material misstatement or omission in the financial representations identified in Subsection E, above;

G.      If the suspension of the judgment is lifted, this judgment becomes immediately due as to the Defendant or Defendants causing the suspension to be lifted in the amount specified in Subsection A, above (which the parties stipulate only for purposes of this Section represents the consumer injury alleged in the Complaint), less any payment previously made pursuant to this Section, plus interest computed from the date of entry of this Order;

H.      All money paid to the Commission pursuant to this Order may be deposited into a fund administered by the Commission or its designee to be used for equitable relief, including consumer redress and any attendant expenses for the administration of any redress fund, or for other equitable relief such as consumer informational remedies.  If a representative of the Commission decides that such equitable remedies are wholly or partially impracticable, the remaining money shall be divided with the State of Maine.  Any money not used by the FTC for equitable relief or transferred to the State of Maine is to be deposited to the U.S.

Treasury as disgorgement.  Defendants have no right to challenge any actions the Commission or its representatives may take pursuant to this Subsection;

I.     All money paid to the State of Maine pursuant to this Order shall be deposited into the Attorney General's other special revenue account and used for consumer education, consumer protection, antitrust enforcement, or for any lawful purpose at the sole discretion of the Attorney General;

J.     Defendants relinquish dominion and all legal and equitable right, title, and interest in all assets transferred pursuant to this Order and may not seek the return of any assets;

K.     The facts alleged in the Complaint will be taken as true, without further proof, in any subsequent civil litigation by or on behalf of either of Plaintiffs, including in a proceeding to enforce their rights to any payment or monetary judgment pursuant to this Order, such as a nondischargeability complaint in any bankruptcy case.

L.     The facts alleged in the Complaint establish all elements necessary to sustain an action by either of Plaintiffs pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A), and this Order will have collateral estoppel effect for such purposes; and

M.     Defendants acknowledge that their Taxpayer Identification Numbers (Social Security Numbers or Employer Identification Numbers), which Defendants must submit to Plaintiffs, may be used for collecting and reporting on any delinquent amount arising out of this Order, in accordance with 31 U.S.C. § 7701.

## XVI.

## COOPERATION WITH FTC AND MAINE

**IT IS FURTHER ORDERED** that Defendants must fully cooperate with representatives of the Commission, the Maine AG, and any of their representatives in this case and in any investigation related to or associated with the transactions or the occurrences that are the subject of the Complaint.  Defendants must provide truthful and complete information, evidence, and testimony.  Individual Defendants must appear and Corporate Defendant must cause its partners, officers, employees, representatives, or agents to appear for interviews, discovery, hearings, trials, and any other proceedings that a representative of the Commission or the Maine AG may reasonably request upon five (5) days' written notice, or other reasonable notice, at such places and times as a Commission or Maine AG representative may designate, without the service of a subpoena.

## XVII.

## CUSTOMER INFORMATION

**IT IS FURTHER ORDERED** that Defendants' officers, agents, and employees, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, are permanently restrained and enjoined from directly or indirectly:

A.      Failing to provide sufficient customer information in their possession, custody, or control to Plaintiffs to enable the Commission to efficiently administer consumer redress.  If a representative of the Commission requests in writing any information related to redress, Defendants must provide it, in the form prescribed by the Commission, within fourteen (14) days.

B.      Disclosing, using, or benefitting from customer information, including the name,

26

address, telephone number, email address, Social Security number, other

identifying information, or any data that enables access to a customer's account

(including a credit card, bank account, or other financial account), that any

Defendant obtained prior to entry of this Order in connection with the

labeling, advertising, marketing, distribution, or sale of any formulation of

FlexiPrin or CogniPrin; and

C.     Failing to destroy such customer information in all forms in their possession,

custody, or control within thirty (30) days after receipt of written direction to do

so from representatives of both the Commission and the Maine Attorney

General's Office.

*Provided, however,* that customer information need not be destroyed, and may be

disclosed, to the extent requested by a government agency or required by law, regulation, or

court order.

## XVIII.

## ORDER ACKNOWLEDGMENTS

**IT IS FURTHER ORDERED** that Defendants obtain acknowledgments of receipt of

this Order:

A.     Each Defendant, within 7 days of entry of this Order, must submit to

the Commission and the State of Maine an acknowledgment of receipt of this

Order sworn under penalty of perjury.

B.     For 10 years after entry of this Order, Individual Defendants for

any business involved in the sale or marketing of any Covered Product that

such Defendants, individually or collectively with Corporate Defendant, is the

majority owner or controls directly or indirectly, and Corporate Defendant, must

deliver a copy of this Order to:

1.      All principals, officers, directors, LLP and LLC partners, managers, and

members;

2.      All employees, agents, and representatives who participate in the

manufacturing, labeling, advertising, marketing, distribution, or sale of

any Covered Product or service; and

3.      Any business entity resulting from any change in structure as set forth in

the Section titled Compliance Reporting.

Delivery must occur within 7 days of entry of this Order for

current personnel.  For all others, delivery must occur before they assume

their responsibilities.

C.      From each individual or entity to which a Defendant delivered a copy of this

Order, that Defendant must obtain, within 30 days, a signed and dated

acknowledgment of receipt of this Order.

## XIX.

## COMPLIANCE REPORTING

**IT IS FURTHER ORDERED** that Defendants make timely submissions to the

Commission and to the Maine AG:

A.      60 days after entry of this Order, each Defendant must submit a

compliance report, sworn under penalty of perjury:

1.      Each Defendant must:  (a) identify the primary physical, postal, and email

address and telephone number as designated points of contact, which

Plaintiffs' representatives may use to communicate with Defendant; (b) identify all of that Defendant's businesses by all of their names, telephone numbers, and physical, postal, email, and Internet addresses; (c) describe the activities of each business, including the goods and services offered, the means of advertising, marketing, and sales, and the involvement of any other Defendants (which Individual Defendants must describe if they know or should know due to their own involvement); (d) describe in detail whether and how that Defendant is in compliance with each Section of this Order; and (e) provide a copy of each Order Acknowledgment obtained pursuant to this Order, unless previously submitted to Plaintiffs.

2. Additionally, Individual Defendants must: (a) identify all telephone numbers and all physical, postal, email, and Internet addresses, including all residences; (b) identify all business activities, including any business for which such Defendants perform services whether as employees or otherwise and any entity in which such Defendants have any ownership interest; and (c) describe in detail such Defendants' involvement in each such business, including title, role, responsibilities, participation, authority, control, and any ownership.

B. For 10 years after entry of this Order, each Defendant must submit a compliance notice, sworn under penalty of perjury, within 14 days of any change in the following:

1. Each Defendant must report any change in: (a) any designated point of

29

contact; (b) the structure of Corporate Defendant or any entity that
Defendants have any ownership interest in or control directly or indirectly
that may affect compliance obligations arising under this Order,
including:  creation, merger, sale, or dissolution of the entity or any
subsidiary, parent, or affiliate that engages in any acts or practices subject
to this Order.

2.     Additionally, Individual Defendants must report any change in:
(a) names, including aliases or fictitious names, or residence addresses; or
(b) titles or roles in any business activity, including any business for which
such Defendants perform services whether as employees or otherwise
and any entity in which such Defendants have any ownership interest, and
identify the name, physical address, and any Internet address of the
business or entity.

C.     For a period of 10 years, each Defendant must submit to the Commission
and the Maine AG notice of the filing of any bankruptcy petition, insolvency
proceeding, or similar proceeding by or against such Defendants within 14 days
of its filing.

D.     Any submission to the Commission or the Maine AG required by this Order
to be sworn under penalty of perjury must be true and accurate and comply with
28 U.S.C. § 1746, such as by concluding:  "I declare under penalty of perjury
under the laws of the United States of America that the foregoing is true and
correct.  Executed on:  _____" and supplying the date, signatory's full name,
title (if applicable), and signature.

E.      Unless otherwise directed by a Commission representative in writing, all

submissions to the Commission pursuant to this Order must be emailed to

DEBrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to:

Associate Director for Enforcement, Bureau of Consumer Protection, Federal

Trade Commission, 600 Pennsylvania Avenue, N.W., Washington, D.C.  20580.

The subject line must begin:  *FTC v. XXL Impressions et al.,* and the number

X_____.

F.      Unless otherwise directed by a Maine AG representative in writing, all

submissions to the Maine AG pursuant to this Order must be sent by

overnight courier (not the U.S. Postal Service) to:  Office of the Attorney General

of Maine, Consumer Protection Division, 111 Sewall Street, 6th Floor, Augusta,

ME  04330.  The subject line must begin:  *Order in re State of Maine v.*

*XXL Impressions et al.,* and must identify the Court and docket number of

this Order as ordered by the Court.

## XX.

### RECORDKEEPING

**IT IS FURTHER ORDERED** that in connection with the sale of any Covered Product,

Defendants must create certain records for 10 years after entry of the Order, and retain each such

record for 5 years.  Specifically, Corporate Defendant and Individual Defendants for any

business that such Defendants, individually or collectively with any other Defendants, is a

majority owner or controls directly or indirectly, must create and retain the following records:

A.      Accounting records showing the revenues from all goods or services sold, all

costs incurred in generating those revenues, and the resulting net profit or loss;

B.      Personnel records showing, for each person providing services, whether as an employee or otherwise, that person's:  name; address; telephone numbers; job title or position; dates of service; and (if applicable) the reason for termination;

C.      Complaints and full or partial refund requests, whether received directly or indirectly, such as through a third party, and any response;

D.      All records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the Commission and the Maine AG; and

E.      A copy of each unique advertisement or other marketing material.

## XXI.

## COMPLIANCE MONITORING

**IT IS FURTHER ORDERED** that, for the purpose of monitoring Defendants' compliance with this Order, including the financial representations upon which part of the judgment was suspended, and any failure to transfer any assets as required by this Order:

A.      Within 14 days of receipt of a written request from a representative of the Commission or the Maine AG, each Defendant must:  submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; appear for depositions; and produce documents for inspection and copying.  Plaintiffs are also authorized to obtain discovery, without further leave of court, using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30 (including telephonic depositions), 31, 33, 34, 36, 45, and 69.

B.      For matters concerning this Order, the Plaintiffs are authorized to communicate directly with each Defendant.  Defendants must permit Plaintiffs' representatives to interview any employee or other person affiliated with any

Defendant who has agreed to such an interview.  The person interviewed may have counsel present.

C.   Plaintiffs may use all other lawful means, including posing, through their representatives, as consumers, suppliers, or other individuals or entities, to Defendants or any individual or entity affiliated with Defendants, without the necessity of identification or prior notice.  Nothing in this Order limits the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1.  Nothing in this Order limits the Maine AG's lawful use of compulsory process, pursuant to section 211 of the Maine UTPA, ME. REV. STAT. tit. 5, § 211.  Defendants hereby consent to the disclosure by the Maine AG to any law enforcement agency and any representative of the State of Maine of any material or information produced by Defendants pursuant to section 211 of the Maine UTPA, whether produced before or after the date of this Order.

D.   Upon written request from a representative of the Commission or the State of Maine, any consumer reporting agency must furnish consumer reports concerning individual Defendants, pursuant to Section 604(1) of the Fair Credit Reporting Act, 15 U.S.C. §1681b(a)(1).

**XXII.**

**RETENTION OF JURISDICTION**

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this matter for

purposes of construction, modification, and enforcement of this Order.

**IT IS SO ORDERED** this 10th day of March, 2017.

/s/ Nancy Torresen
United States Chief District Judge

**IT IS SO STIPULATED** this 15 day of February, 2017.

DAVID C. SHONKA
Acting General Counsel

/s/James A. Prunty
James A. Prunty
David P. Frankel
Federal Trade Commission
600 Pennsylvania Avenue, NW
Room CC-10562
Washington, D.C. 20580
Telephone: 202-326-2438, 2812
Facsimile:  202-326-3259
Email:  jprunty@ftc.gov
          dfrankel@ftc.gov
Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

**IT IS SO STIPULATED** this 15 day of February, 2017.

JANET T. MILLS
Attorney General, State of Maine

/s/Brendan F.X. O'Neil
Brendan F.X. O'Neil
Assistant Attorney General
Office of the Attorney General of Maine
6 State House Station
Augusta, Maine 04333-0006
Telephone: 207-626-8842
Facsimile:  207-624-7730
Email:  brendan.oneil@maine.gov

34

**IT IS SO STIPULATED** this 13 day of February, 2017.


/s/ Justin Bumann
Defendant Justin Bumann


**IT IS SO STIPULATED** this 13 day of February, 2017.


/s/ Justin Steinle
Defendant Justin Steinle


**IT IS SO STIPULATED** this 13 day of February, 2017.

/s/ Justin Steinle

By _____
On behalf of Defendant J2 Response, L.L.P

ATTORNEY FOR DEFENDANTS J2
RESPONSE, L.L.P., JUSTIN BUMANN,
and JUSTIN STEINLE

/s/ Marc Roth
Marc Roth, Esq.
Manatt, Phelps & Phillips, LLP
*Pro Hac Vice* forthcoming
7 Times Square
New York, NY  10036
Telephone: (212) 790-4542
Email: mroth@manatt.com

John D. Clifford, IV
Clifford & Golden, P.A.
5 Maple Street, P.O. Box 368
Lisbon Falls, ME  04552
Telephone: (207) 353-9366