IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

_____

|  |  |
|---|---|
| FEDERAL TRADE COMMISSION and STATE OF MAINE, | ) ) ) |
| | ) Case No. |
| Plaintiffs, | ) ) |
| v. | ) **STIPULATED FINAL JUDGMENT** ) **AND ORDER FOR PERMANENT** ) **INJUNCTION AND OTHER** |
| XXL IMPRESSIONS LLC, a limited liability company, also d/b/a BETTER HEALTH NUTRITIONALS, | ) **EQUITABLE RELIEF AS TO** ) **DEFENDANT BRAZOS MINSHEW,** ) **A/K/A SAMUEL BRANT** ) |
| JEFFREY R. POWLOWSKY, individually and as an owner and officer of XXL IMPRESSIONS LLC, | ) ) ) ) |
| J2 RESPONSE L.L.P., a limited liability partnership, also d/b/a J2 RESPONSE, | ) ) ) |
| JUSTIN BUMANN, individually and as a partner of J2 RESPONSE L.L.P., | ) ) ) |
| JUSTIN STEINLE, individually and as a partner of J2 RESPONSE L.L.P., | ) ) ) |
| SYNERGIXX, LLC, a limited liability company, also d/b/a CTF MEDIA, | ) ) ) |
| CHARLIE R. FUSCO, individually and as an owner and officer of SYNERGIXX, LLC, | ) ) ) ) |
| RONALD JAHNER, and | ) ) |
| BRAZOS MINSHEW a/k/a SAMUEL BRANT, | ) ) |
| Defendants. | ) ) |

_____ )

Plaintiffs, the Federal Trade Commission ("FTC" or "Commission") and the State of Maine, as represented in this matter by the Office of the Attorney General of Maine ("Maine AG") ("Plaintiffs"), filed a Complaint for Permanent Injunction and Other Equitable Relief against Defendants pursuant to Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b), and pursuant to Section 209 of the Maine Unfair Trade Practices Act ("Maine UTPA"), ME. REV. STAT. tit. 5, § 209, to obtain permanent injunctive relief, rescission or reformation of contracts, restitution, the refund of monies paid, disgorgement of ill-gotten monies, and other equitable relief for Defendant's acts or practices in violation of Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52, and in violation of Section 207 of the Maine UTPA, ME. REV. STAT. tit. 5, § 207, in connection with the labeling, advertising, marketing, distribution, and sale of products that purported to provide relief from back and joint pain and to prevent or mitigate cognitive decline.

The Commission, the State of Maine, and Defendant Brazos Minshew, a/k/a Samuel Brant ("Defendant Minshew") stipulate to the entry of this Final Judgment and Order for Permanent Injunction and Other Equitable Relief as to Defendant Minshew.

**FINDINGS**

1.      This Court has jurisdiction over this matter.

2.      The Complaint charges that Defendant Minshew participated in deceptive acts or practices in violation of Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52, and in violation of Section 207 of the Maine UTPA, ME. REV. STAT. tit. 5, § 207, in connection with the advertising, marketing, distribution, and sale of dietary supplements that purported to provide pain relief and to prevent or mitigate cognitive decline.

2

3.      Defendant Minshew neither admits nor denies any of the allegations in the Complaint, except as specifically stated in this Order.  Defendant Minshew admits the facts necessary to establish jurisdiction only for purposes of this action.

4.      Defendant Minshew waives any claim that he may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action through the date of this Order, and agrees to bear his own costs and attorney fees.

5.      Defendant Minshew and Plaintiffs waive all rights to appeal or otherwise challenge or contest the validity of this Order.

## DEFINITIONS

For the purpose of this Order, the following definitions apply:

1.      "**Defendant**" means Brazos Minshew, a/k/a Samuel Brant.

2.      "**Covered Product**" means any Dietary supplement, Food, or Drug, including but not limited to CogniPrin.

3.      "**Dietary supplement**" means:

A.      any product labeled as a dietary supplement or otherwise represented as a dietary supplement; or

B.      any pill, tablet, capsule, powder, softgel, gelcap, liquid, or other similar form containing one or more ingredients that are a vitamin, mineral, herb or other botanical, amino acid, probiotic, or other dietary substance for use by humans to supplement the diet by increasing the total dietary intake, or a concentrate, metabolite, constituent, extract, or combination of any ingredient described above, that is intended to be ingested, and is not

3

represented to be used as a conventional food or as a sole item of a meal or the diet.

4.      "**Drug**" means:  (1) articles recognized in the official United States Pharmacopoeia, official Homoeopathic Pharmacopoeia of the United States, or official National Formulary, or any supplement to any of them; (2) articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in humans or other animals; (3) articles (other than food) intended to affect the structure or any function of the body of humans or other animals; and (4) articles intended for use as a component of any article specified in (1), (2), or (3); but does not include devices or their components, parts, or accessories.

5.      "**Essentially Equivalent Product**" means a product that contains the identical ingredients, except for inactive ingredients (*e.g.*, binders, colors, fillers, excipients), in the same form and dosage, and with the same route of administration (*e.g.*, orally, sublingually), as the Covered Product; *provided that* the Covered Product may contain additional ingredients if reliable scientific evidence generally accepted by experts in the field indicates that the amount and combination of additional ingredients is unlikely to impede or inhibit the effectiveness of the ingredients in the Essentially Equivalent Product.

6.      "**Food**" means:  (1) any article used for food or drink for humans or other animals; (2) chewing gum; and (3) any article used for components of any such article.

7.      "**Including**" means including but not limited to.

8.      "**Person**" means a natural person, an organization, or other legal entity, including a corporation, partnership, sole proprietorship, limited liability company, association, cooperative, or any other group or combination acting as an entity.

# I.

## PROHIBITED REPRESENTATIONS:  MITIGATION OF COGNITIVE DECLINE, MEMORY IMPROVEMENT, AND DISEASE CLAIMS

**IT IS HEREBY ORDERED** that Defendant, Defendant's officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any Covered Product, are permanently restrained and enjoined from making, or assisting others in making, expressly or by implication, including through the use of a product name, endorsement, depiction, or illustration, any representation, that, in humans, such Covered Product:

A.      Reverses, mitigates, or prevents cognitive or mental decline;

B.      Improves memory;

C.      Restores lost memory capacity; or

D.      Cures, mitigates, or treats any disease;

unless the representation is non-misleading and, at the time of making such representation, they possess and rely upon competent and reliable scientific evidence substantiating that the representation is true.  For purposes of this Section, competent and reliable scientific evidence shall consist of human clinical testing of the Covered Product, or of an Essentially Equivalent Product, that is sufficient in quality and quantity based on standards generally accepted by experts in the relevant disease, condition, or function to which the representation relates, when considered in light of the entire body of relevant and reliable scientific evidence, to substantiate that the representation is true.  Such testing must be: (1) randomized, double-blind, and placebo-controlled; and (2) conducted by researchers qualified by training and experience to conduct

such testing.  Persons covered by this section have the burden of proving that a product satisfies the definition of Essentially Equivalent Product.

## II.

## PROHIBITED REPRESENTATIONS:  OTHER HEALTH-RELATED CLAIMS

**IT IS FURTHER ORDERED** that Defendant, Defendant's officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any Covered Product, other than a representation covered under the Section of this Order titled Prohibited Representations:  Mitigation Of Cognitive Decline, Memory Improvement, And Disease Claims, are permanently restrained and enjoined from making, or assisting others in making, expressly or by implication, including through the use of a product name, endorsement, depiction, or illustration, any representation about the health benefits, safety, performance, or efficacy of any Covered Product, unless the representation is non-misleading, and, at the time of making such representation, they possess and rely upon competent and reliable scientific evidence that is sufficient in quality and quantity based on standards generally accepted by experts in the relevant disease, condition, or function to which the representation relates, when considered in light of the entire body of relevant and reliable scientific evidence, to substantiate that the representation is true.

For purposes of this Section, competent and reliable scientific evidence means tests, analyses, research, or studies (1) that have been conducted and evaluated in an objective manner by experts in the relevant disease, condition, or function to which the representation relates; (2) that are generally accepted by such experts to yield accurate and reliable results; and (3) that

are randomized, double-blind, and placebo-controlled human clinical testing of the Covered

Product, or of an Essentially Equivalent Product, when such experts would generally require

such human clinical testing to substantiate that the representation is true.  Persons covered by this

section have the burden of proving that a product satisfies the definition of Essentially

Equivalent Product.

### III.

### PROHIBITED REPRESENTATIONS REGARDING TESTS, STUDIES, OR INGREDIENTS

**IT IS FURTHER ORDERED** that Defendant, Defendant's officers, agents, employees,

and attorneys, and all other persons in active concert or participation with any of them, who

receive actual notice of this Order, whether acting directly or indirectly, in connection with the

manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any

Covered Product are permanently restrained and enjoined from misrepresenting, in any manner,

expressly or by implication, including through the use of any product, endorsement, depiction, or

illustration:

A.    That any Covered Product is clinically proven to restore or improve memory, or

mitigate cognitive decline;

B.    That the performance or benefits of any Covered Product are scientifically

proven or otherwise established; or

C.    The existence, contents, validity, results, conclusions, or interpretations of any

test, study, or other research.

### IV.

### FDA-APPROVED CLAIMS

**IT IS FURTHER ORDERED** that nothing in this Order prohibits Defendant,

7

Defendant's officers, agents, employees, and attorneys, or all other persons in active concert or participation with any of them, from:

A.   For any drug, making any representation that is approved in labeling for such drug under any tentative final or final monograph promulgated by the Food and Drug Administration, or under any new drug application approved by the Food and Drug Administration; and

B.   For any product, making a representation that is specifically authorized for use in labeling for such product by regulations promulgated by the Food and Drug Administration pursuant to the Nutrition Labeling and Education Act of 1990 or permitted under Sections 303-304 of the Food and Drug Administration Modernization Act of 1997.

## V.

## PROHIBITED REPRESENTATIONS AS AN EXPERT ENDORSER

**IT IS FURTHER ORDERED** that Defendant, Defendant's officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any Covered Product are permanently restrained and enjoined from making, directly or by implication, any representations as an expert endorser, including, but not limited to, the representations covered by the Sections of this Order titled Prohibited Representations: Mitigation Of Cognitive Decline, Memory Improvement, And Disease Claims (Section I) and Prohibited Representations:  Other Health-Related Claims (Section II), above, unless he possesses the represented expertise and he possesses and relies upon:

A.     Competent and reliable scientific evidence required for the particular

representation, as set forth in Sections I and II, above; and

B.     An actual exercise of the represented expertise, in the form of an

evaluation or test of such product conducted and evaluated in an objective

manner and which is generally accepted in the relevant profession to yield

accurate and reliable results.

## VI.

## COOPERATION WITH FTC AND MAINE

**IT IS FURTHER ORDERED** that Defendant must fully cooperate with representatives of the Commission, the Maine AG, and any of their representatives in this case and in any investigation related to or associated with the transactions or the occurrences that are the subject of the Complaint.  Defendant must provide truthful and complete information, evidence, and testimony.  Defendant must appear for interviews, discovery, hearings, trials, and any other proceedings that a representative of the Commission or the Maine AG may reasonably request upon 5 days' written notice, or other reasonable notice, at such places and times as a Commission or Maine AG representative may designate, without the service of a subpoena.

## VII.

## ORDER ACKNOWLEDGMENTS

**IT IS FURTHER ORDERED** that Defendant acknowledge receipt of this Order within 7 days of entry of this Order.  Such acknowledgment must be sworn under penalty of perjury and must be submitted to the Commission and the State of Maine upon receipt of this Order. Additionally,

A.     For 10 years after entry of this Order, Defendant must, for any

business involved in the sale or marketing of any Covered Product that Defendant is the majority owner or controls directly or indirectly, must deliver a copy of this Order to:

1.      All principals, officers, directors, and LLC managers and members;

2.      All employees, agents, and representatives who participate in the labeling, advertising, marketing, distribution, or sale of any Covered Product or service; and

3.      Any business entity resulting from any change in structure as set forth in the Section titled Compliance Reporting.

Delivery must occur within 7 days of entry of this Order for current personnel.  For all others, delivery must occur before they assume their responsibilities.

B.      From each individual or entity to which Defendant delivered a copy of this Order, Defendant must obtain, within 30 days, a signed and dated acknowledgment of receipt of this Order.

## VIII.

## COMPLIANCE REPORTING

**IT IS FURTHER ORDERED** that Defendant make timely submissions to the Commission and to the Maine AG:

A.      60 days after entry of this Order, Defendant must submit a compliance report, sworn under penalty of perjury:

1.      Defendant must:  (a) identify the primary physical, postal, and email address and telephone number as designated points of contact, which Plaintiffs' representatives may use to communicate with Defendant;

10

(b) identify all of Defendant's businesses by all of their names, telephone numbers, and physical, postal, email, and Internet addresses; (c) describe the activities of each business, including the goods and services offered, the means of advertising, marketing, and sales, and the involvement of any other Defendant (which Defendant must describe if he knows or should know due to his own involvement); (d) describe in detail whether and how Defendant is in compliance with each Section of this Order; and (e) provide a copy of each Order Acknowledgment obtained pursuant to this Order, unless previously submitted to Plaintiffs.

2.    Additionally, Defendant must:  (a) identify all telephone numbers and all physical, postal, email, and Internet addresses, including all residences; (b) identify all business activities, including any business for which Defendant performs services whether as an employee or otherwise and any entity in which Defendant has any ownership interest; and (c) describe in detail Defendant's involvement in each such business, including title, role, responsibilities, participation, authority, control, and any ownership.

B.    For 10 years after entry of this Order, Defendant must submit a compliance notice, sworn under penalty of perjury, within 14 days of any change in the following:

1.    Defendant must report any change in:  (a) any designated point of contact; (b) the structure of any corporation or any entity that Defendant has any ownership interest in or control, directly or indirectly, that may affect compliance obligations arising under this Order, including:  creation,

       merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order.

2.      Additionally, Defendant must report any change in: (a) names, including aliases or fictitious names, or residence addresses; or (b) titles or roles in any business activity, including any business for which Defendant performs services whether as an employee or otherwise and any entity in which Defendant has any ownership interest, and identify the name, physical address, and any Internet address of the business or entity.

C.      For a period of 10 years, Defendant must submit to the Commission and the Maine AG notice of the filing of any bankruptcy petition, insolvency proceeding, or similar proceeding by or against Defendant within 14 days of its filing.

D.      Any submission to the Commission or the Maine AG required by this Order to be sworn under penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746, such as by concluding:  "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on: _____" and supplying the date, signatory's full name, title (if applicable), and signature.

E.      Unless otherwise directed by a Commission representative in writing, all submissions to the Commission pursuant to this Order must be emailed to DEBrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to: Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue, N.W., Washington, D.C.  20580.

The subject line must begin:  *FTC v. XXL Impressions LLC et al.*, and the number X_____.

F.      Unless otherwise directed by a Maine AG representative in writing, all submissions to the Maine AG pursuant to this Order must be sent by overnight courier (not the U.S. Postal Service) to: Office of the Attorney General of Maine, Consumer Protection Division, 111 Sewall Street, 6th Floor, Augusta, ME  04330.  The subject line must begin:  *Order in re State of Maine v. XXL Impressions LLC et al.* and must identify the Court and docket number of this Order as ordered by the Court.

## IX.

## RECORDKEEPING

**IT IS FURTHER ORDERED** that in connection with the sale of any Covered Product, Defendant must create certain records for 10 years after entry of the Order, and retain each such record for 5 years.  Specifically, Defendant must, for any business that Defendant is a majority owner or controls, directly or indirectly, must create and retain the following records:

A.      Accounting records showing the revenues from all goods or services sold, all costs incurred in generating those revenues, and the resulting net profit or loss;

B.      Personnel records showing, for each person providing services, whether as an employee or otherwise, that person's:  name; address; telephone numbers; job title or position; dates of service; and (if applicable) the reason for termination;

C.      Complaints and full or partial refund requests, whether received directly or indirectly, such as through a third party, and any response;

D.      All records necessary to demonstrate full compliance with each provision of this

13

Order, including all submissions to the Commission and the Maine AG; and

E.      A copy of each unique advertisement or other marketing material.

## X.

## COMPLIANCE MONITORING

**IT IS FURTHER ORDERED** that, for the purpose of monitoring Defendant's compliance with this Order:

A.      Within 14 days of receipt of a written request from a representative of
the Commission or the Maine AG, Defendant must:  submit additional
compliance reports or other requested information, which must be sworn under
penalty of perjury; appear for depositions; and produce documents for inspection
and copying.  Plaintiffs are also authorized to obtain discovery, without further
leave of court, using any of the procedures prescribed by Federal Rules of Civil
Procedure 29, 30 (including telephonic depositions), 31, 33, 34, 36, 45, and 69.

B.      For matters concerning this Order, the Plaintiffs are authorized to
communicate directly with Defendant.  Defendant must permit Plaintiffs'
representatives to interview any employee or other person affiliated with
Defendant who has agreed to such an interview.  The person interviewed may
have counsel present.

C.      Plaintiffs may use all other lawful means, including posing, through their
representatives, as consumers, suppliers, or other individuals or entities, to
Defendant or any individual or entity affiliated with Defendant, without the
necessity of identification or prior notice.  Nothing in this Order limits the
Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of

14

the FTC Act, 15 U.S.C. §§ 49, 57b-1.  Nothing in this Order limits the Maine AG's lawful use of compulsory process, pursuant to section 211 of the Maine UTPA, ME. REV. STAT. tit. 5, § 211.  Defendant hereby consents to the disclosure by the Maine AG to any law enforcement agency and any representative of the State of Maine of any material or information produced by Defendant pursuant to section 211 of the Maine UTPA, whether produced before or after the date of this Order.

D.    Upon written request from a representative of the Commission or the State of Maine, any consumer reporting agency must furnish consumer reports concerning Defendant Minshew, pursuant to Section 604(1) of the Fair Credit Reporting Act, 15 U.S.C. §1681b(a)(1).

///

///

///

///

///

///

///

///

///

///

///

///

## XI.

### RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this matter for

purposes of construction, modification, and enforcement of this Order.

**IT IS SO ORDERED** this 10th day of March, 2017.

/s/ Nancy Torresen_____
United States Chief District Judge

**IT IS SO STIPULATED** this 15 day of February, 2017.

DAVID C. SHONKA
Acting General Counsel

/s/ James A. Prunty
James A. Prunty
David P. Frankel
Federal Trade Commission
600 Pennsylvania Avenue, NW
Washington, D.C. 20580
Telephone: 202-326-2438, 2812
Facsimile:  202-326-3259
Email:  jprunty@ftc.gov
        dfrankel@ftc.gov

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

16

**IT IS SO STIPULATED** this 15 day of February, 2017.

JANET T. MILLS
Attorney General, State of Maine


/s/ Brendan F.X. O'Neil
Brendan F.X. O'Neil
Assistant Attorney General
Office of the Attorney General of Maine
6 State House Station
Augusta, Maine 04333-0006
Telephone: 207-626-8842
Facsimile:  207-624-7730
Email:  brendan.oneil@maine.gov



**IT IS SO STIPULATED** this 10 day of February, 2017.


/s/ Brazos Minshew
Defendant Brazos Minshew
*Pro Se*
2126 S. 48th Street
Coolidge, Arizona 85128